IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

THOMAS WILSON                                                    PLAINTIFF
ADC #161140

v.                              No: 1:19-cv-00062 DPM-PSH

MARJORIE HALL, *et al.*                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I.  Introduction

Plaintiff Thomas Wilson, an inmate at the Arkansas Department of Correction's North Central Unit, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 19, 2019 (Doc. No. 2).  He subsequently filed an amended complaint

(Doc. No. 17).  After screening, the Court found that service was appropriate as to Wilson's Eighth Amendment deliberate indifference claims against defendants Health Service Administrator ("HSA") Marjorie Hall, Lt. Ernest Johnson, Sgt. Patrick Thompson, APN Amie Burrow, Capt. Lyndal Cooper, and Terry Fulfer.  *See* Doc. No. 21.  Wilson complains about events that appear to have taken place at the North Central Unit beginning in June or July 2019 and after.[1]  In his amended complaint, he alleges that HSA Hall interfered with his classification, causing him to be assigned to field work.  Doc. No. 17 at 4.  Wilson claims that the work assignment resulted in injuries from a fall.  He also alleges that HSA Hall interfered with his medical treatment after the fall.  *Id.* at 13.  Additionally, Wilson asserts that APN Burrow provided inadequate medical care and that Sgt. Thompson, Lt. Johnson, Capt. Cooper, and Fulfer required him to work in the field despite his medical restrictions.  Doc. No. 17 at 5-10.

Before the Court is a motion for summary judgment filed by APN Burrow and HSA Hall (the "Medical Defendants"), a brief-in-support, and a statement of facts (Doc. Nos. 63-65); responsive pleadings filed by Wilson (Doc. Nos. 77-78); a reply filed by the Medical Defendants (Doc. No. 79); and another reply filed by Wilson (Doc. No. 80).   Sgt. Thompson, Capt. Cooper, Terry Fulfer, and Lt. Johnson (the

---

[1] According to the ADC defendants, Wilson was transferred to the North Central Unit on June 3, 2019.  *See* Doc. No. 65-1.

"ADC Defendants") also filed a motion for summary judgment, a brief-in-support, and a statement of facts (Doc. Nos. 70-72). Wilson did not respond to the ADC Defendants' motion. For the reasons described herein, the undersigned recommends that the defendants' motions for summary judgment be granted.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or

other materials . . .". FED. R. CIV. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.  Analysis

The defendants claim that they are entitled to summary judgment because Wilson failed to exhaust available administrative remedies against them before he filed this lawsuit.  In support of their motion, the Medical Defendants submitted Wilson's status assignment sheet (Doc. No. 65-1); a declaration by Michelle Buterbaugh, the ADC's Medical Grievance Supervisor (Doc. No. 65-2 at 1-3); the ADC's grievance policy (*id.* at 4-21); and a chart showing grievances submitted by Wilson during the relevant time period (*id.* at 22).  The ADC Defendants submitted the declaration of Terri Grigsby Brown, the ADC's Inmate Grievance Supervisor (Doc. No. 70-1), and the ADC's grievance policy (Doc. No. 70-2).

The Prison Litigation Reform Act (PLRA) requires an inmate to exhaust prison grievance procedures before filing suit in federal court.  *See* 42 U.S.C. §1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002).  Exhaustion under the PLRA is mandatory.  *Jones v. Bock*, 549 U.S. at 211.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  The Supreme Court in *Booth v. Churner* held that "exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought."  532 U.S. 731, 738–39 (2001).  The Eighth Circuit has found administrative remedies to be unavailable where prison officials prevented inmates from utilizing the grievance procedures or where officials failed to comply with such procedures. *See Gibson v. Weber*, 431 F.3d 339 (8th Cir. 2005); *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001).  The United States Supreme Court held that an administrative remedy is unavailable when "it operates as a simple dead end," or when it "might be so opaque that it becomes, practically speaking, incapable of use." *Ross v. Blake,* 136 S.Ct. 1850, 1859 (2016).

The PLRA does not prescribe the manner in which exhaustion occurs.  *See Jones v. Bock*, 549 U.S. at 218.  It merely requires compliance with prison grievance

procedures to properly exhaust. *See id*. Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

Pursuant to the ADC's grievance policy (AD 14-16), inmates are provided Unit Level Grievance Forms as part of the Inmate Grievance Procedure. *See* Doc. No. 70-2 at 4. To resolve a problem, an inmate must first seek informal resolution by submitting a Step One Unit Level Grievance Form within 15 days after the occurrence of the incident. *Id*. at 5. Inmates are to "specifically name each individual involved for a proper investigation and response to be completed by the ADC." *Id*. at 4. The policy provides that only one grievance form

> can be submitted per grievance and only one problem/issue should be stated in the grievance, not multiple problems/issues. An inmate must use a separate form for each issue. Only one issue will be addressed. Additional problems/issues contained in the grievance will not be considered as exhausted.

*Id*. at 5. An inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." *Id*. at 5-6. A problem solver investigates the complaint and provides a written response at the bottom of the form. *Id*. If the inmate is not satisfied with the resolution, he may then complete Step Two of the grievance procedure and submit the form as a formal grievance. *Id*. at 8. If the inmate receives no response, or if the inmate is not satisfied with the response,

the inmate can appeal to the appropriate Chief Deputy/Deputy/Assistant Director. *Id.* at 10-11.  Once that person responds, the grievance process is exhausted.  *Id.* at 12.  According to the ADC's grievance policy, the entire grievance procedure should be completed within 76 working days absent an extension or unforeseen circumstances.  *Id.* at 13.  The grievance policy specifically states that inmates must exhaust administrative remedies at all levels of the procedure before filing a federal civil rights lawsuit.  *Id.* at 17.

### A.  The ADC Defendants

Wilson was transferred to the North Central Unit on June 3, 2019.  Doc. No. 65-1.  According to her declaration, Inmate Grievance Supervisor Brown reviewed Wilson's non-medical grievance history from June 4, 2019, through July 19, 2019, the date this lawsuit was filed.  Doc. No. 70-1 at 5-6.  Based on that review, Brown states that Wilson did not file any grievances naming the ADC Defendants or describing his claims against them before he filed this lawsuit.  *Id.*  Wilson has not refuted the facts or records relied on by the ADC Defendants in support of their motion.  The Court therefore finds that no genuine issue of material fact exists, and that Wilson did not exhaust available administrative remedies before he filed this lawsuit as a matter of law.  The ADC Defendants are therefore entitled to summary judgment.

### B. The Medical Defendants

In Medical Grievance Supervisor Buterbaugh's declaration, she states that she reviewed Wilson's medical grievance records from June 3, 2019 through July 19, 2019. Based on that review, Buterbaugh asserts that "Wilson filed, appealed, *exhausted*, and thus completed the grievance process for no (zero) medical grievances during the time frame in question." Doc. No. 65-2 at 3. The Medical Defendants also submitted a chart showing that Wilson filed five medical grievances between June 4, 2019, and July 19, 2019, only three were appealed, and all of the appeal responses were issued in August of 2019, after this lawsuit was filed. Doc. No. 65-2 at 22.

In his response to the Medical Defendants' motion for summary judgment, Wilson contends that he exhausted one grievance regarding his claims, Grievance No. NC-19-00419. Doc. No. 77 at 4. Wilson submitted NC-19-00419 as a Step One grievance on June 4, 2019. *Id.* at 9. Wilson grieved:

> On Tuesday June 4, 2019 Approx. 9:30 AM. I Thomas Wilson was instructed to report to laundry when I got to laundry I was told that I was going to be having a job or be on medical. Miss. Jones and Miss. Hall, Margie was there. I Thomas Wilson informed Both Miss Jones and Miss. Hall of me being a M2 due to my medical from back in 2015 when I came to ADC. for the first time and Miss. Jones agreed with me. But Miss. Hall argued with me, and voided my M2 and put me in feld utility 3. Which is gardning. Due to Miss.'s Halls action may cause more damage to my physical health and cause more pain and suffering that would not be able to do my job successfully. I was a Barraks porter from 2015 to 2017 Due to my medical for a reason. This is my first step to filling a civil claim in a court of law.

*Id.* HSA Hall responded the following day, and stated, "Your physical was completed on 5/23/19 – no restrictions were given at that time. You currently do not have any current restrictions to prevent you from working your current job assignment." *Id.* Wilson proceeded to Step Two on June 5, 2019, initiating the formal grievance process. Wilson received notice that the grievance was received by the Health Services Administrator, and he "should receive communication regarding the Grievance by 07/05/2019." *Id.* at 10. On June 24, 2019, HSA Hall responded to the grievance, finding it to be without merit because he had been given an intake medical exam and was given an M-2 medical class at that time with no restrictions.[2] *Id.* at 11. HSA Hall noted that Wilson had restrictions of "LOW BUNK LOW TIER." *Id.*

Wilson appealed to the Deputy Director the following day, June 25, 2019. *Id.* at 11-12. He stated,

> It's not my fault that Franklin, Tracey, L. an APN. didn't do her job by complying with medical policy and placing any and/or all restrictions

---

[2] The Court notes that it may have been against the ADC grievance policy for HSA Hall to respond to Wilson's grievance because he was complaining about her misconduct. *See* Doc. No. 70-2 at 9 ("The HSA, or designee, should not respond to a grievance that is alleging misconduct by that individual unless the inmate still has another step in the grievance process to challenge the conduct, or the inmate is alleging indirect misconduct (failure to act); where the inmate is alleging direct misconduct (such as physical abuse or retaliation) by the HSA, then the appropriate Regional Manager will respond after the medical department has appropriately logged the resolution."). However, the Court notes that Hall's response did not cause the grievance procedure to be unavailable for Wilson; she did not reject the grievance, and he was able to appeal her response to the Deputy Director.

> from previous physical exam in 2015 onto this exam. There is a reason
> why I have a lower bunk and lower tier. I'm to remain on level ground
> due to my medical conditions. Therefore I believe there is merit in my
> grievance to grant any and/or all my restricktions to be aplyed to my
> M-2 class as it was in 2015 medical exam. I believe that I should not
> have to suffer in pain for medical staffs failure to comply with policy.
> I find this grievance with merit, and is grievable.

*Id.* The Deputy Director responded to Wilson's appeal on August 9, 2019, finding it to be without merit. *Id.* at 13.

Wilson contends that this grievance should be considered exhausted because he filed his appeal to the Deputy Director before he filed this lawsuit. *Id.* at 4-6. Wilson is incorrect. The ADC grievance policy specifically provides that the grievance process is not complete until an appeal response is finalized. *See* Doc. No. 70-2 at 12. The Court cannot waive the PLRA's exhaustion requirement. As discussed above, exhaustion must be achieved before the lawsuit is filed, or dismissal is mandatory. *Jones v. Bock*, 549 U.S. at 211. When Wilson filed this suit on July 19, 2019, the Deputy Director had not yet responded to Wilson's appeal, and thus the grievance was not yet exhausted.

Wilson also contends that the appeal response was untimely. He may be correct. The ADC grievance policy provides that an appeal response by the Deputy Director should be made "within 30 working days" of the appeal.[3] *Id.* In this case,

---

[3] The ADC grievance policy defines working days as "Monday through Friday, excluding state observed holidays." Doc. No. 70-2 at 2.

excluding weekends and holidays, the appeal response was issued 32 days after the appeal.[4]   This delay, under the facts presented, however, does not change the fact that Wilson failed to exhaust this grievance before he filed this lawsuit.   Assuming the absence of a Grievance Extension Form extending the deadline, the Deputy Director had a deadline of August 7, 2019, which was the 30th working day after Wilson appealed, to respond to the final appeal.   Wilson filed this action on July 19, 2019, more than two weeks before the Deputy Director's response was due.[5] Accordingly, at the time Wilson filed this lawsuit, the appeal response was not yet due, and therefore the grievance process had not been completed.[6]   The Deputy Director's tardy response to Wilson's appeal did not render the grievance procedure

---

[4] According to the ADC grievance policy, if a longer period of time is required for a response, the Grievance Extension Form should be used to notify the inmate of the reason for the delay and its expected length.   Once the form is completed, the time limits for a response are automatically extended unless the inmate disagrees to the extension in writing.   However, if the inmate disagrees with the extension, no further action will be taken and the inmate waives his right to have the grievance considered or exhausted. Doc. No. 70-2 at 12.   It is unclear whether Wilson received notice that the appeal response would be delayed and the expected length of the delay.

[5] The ADC grievance procedure contemplates that the grievance procedure may take up to 76 *working* days absent extensions and unforeseen circumstances.   Doc. No. 70-2 at 13.   The Court notes that the appeal response in this case was issued 47 working days after Wilson initially submitted a Step One grievance, well within the normal timeline for completing the grievance procedure.

[6] The Court does not reach the issue of whether a late-filed appeal response might cause the grievance procedure to be deemed unavailable to an inmate in some circumstances.

unavailable to Wilson. *See Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015) ("The delays in responding to Porter are apparently unjustified. However, they did not prevent him from utilizing grievance procedures, and the officials' non-compliance did not cause remedies to be unavailable.").

Because Wilson filed this case before the grievance process was completed with respect to Grievance No. NC-19-00419,[7] Wilson failed to exhaust his administrative remedies as to the Medical Defendants, and summary judgment should be awarded in their favor.

## IV.  Conclusion

Wilson did not exhaust available administrative remedies before initiating this lawsuit.  Accordingly, the motions for summary judgment (Doc. Nos. 63 & 70) filed by the Medical and ADC Defendants should be granted, and Wilson's claims should be dismissed without prejudice.

DATED this 7th day of February, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] The Court notes that the only defendant named in NC-19-00419 is HSA Hall.  In that grievance, Wilson described his complaint allegations that she voided his medical restriction and forced him to work in the field.  The ADC grievance policy requires inmates to name each individual involved.  *See* Doc. No. 70-2 at 5-6.  Accordingly, even if NC-19-00419 were exhausted before Wilson filed this lawsuit, it would only serve to exhaust his claims against HSA Hall, and no other defendant.  Additionally, Wilson's allegation that HSA Hall is not a licensed nurse is irrelevant to whether he has exhausted his claims against her.  *See* Doc. Nos. 78-79.

12